## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

PRESIDENT DONALD J. TRUMP, 45th President
of the United States of America, in his individual
capacity,

                             Plaintiff,

      v.

SIMON & SCHUSTER, INC., a New York
corporation, ROBERT WOODWARD p.k.a. BOB
WOODWARD, an individual, and PARAMOUNT
GLOBAL, a Delaware corporation, f/k/a Viacom
Inc., successor by merger to CBS Corporation, a
Pennsylvania corporation f/k/a Westinghouse
Electric Corporation,

                         Defendants.

3:23-cv-02333-RV-ZCB

## JOINT REPORT OF RULE 26(f) CONFERENCE
## AND PROPOSED CASE MANAGEMENT PLAN

In accordance with Federal Rule of Civil Procedure 26(f), counsel for the

parties met and conferred via Zoom on April 26, 2023 and, having exchanged

communications thereafter, submit the following report of their meeting for the

Court's consideration.

## I.     MAGISTRATE JUDGE JURISDICTION

The parties conferred regarding their willingness to consent to magistrate judge jurisdiction.

## II.    NATURE AND BASIS OF ALL CLAIMS AND DEFENSES

The parties discussed the nature and basis of their respective claims and defenses in a good faith attempt to identify the principal factual and legal issues in dispute.  The parties set forth and summarize their respective positions as follows:

### A. Plaintiff's Position

This action centers on the ownership interests in certain sound recordings and the rights appurtenant of President Trump which were recorded during a series of interviews between him and Mr. Woodward ("Interview Sound Recordings") as well as materials published and distributed by the Defendants based entirely on the Interview Sound Recordings. This includes an audiobook dubbed *The Trump Tapes: Bob Woodward's Twenty Interviews with President Donald Trump* ("Audiobook") and subsequently published paperback, e-book, and CD ("Derivative Works").

The origination point of the Audiobook and the derivative Works were interviews between President Trump and Mr. Woodward. These interviews were not conducted in the scope of government employment and were predicated upon an agreement between President Trump and Mr. Woodward providing the latter a

limited license to utilize those recordings as an aide memoire for a particular written publication—not the Audiobook or the Derivative Works.

The Defendants, changing tack from the original agreement and taking an unprecedented step, have utilized, and reaped benefits from publication and distribution of the Interview Sound Recordings, Audiobook, and Derivative Works without any financial recompense to President Trump, and without engaging in any transformative use, fair use, or privileged conduct.

***Plaintiff's Claims***

Count I of the Complaint seeks declaratory relief regarding ownership of copyrights, brought not only under 28 U.S.C § 2201 and § 2202 but also arising under the Copyright Laws of the United States, 17 U.S.C. §§ 101 et. seq.

President Trump seeks monetary damages and a declaration of his copyright ownership interest in the Interview Sound Recordings, Audiobook and Derivative Works. The same has been challenged by the Defendants' actions to date, including submissions to the Copyright Office seeking copyright protection despite President Trump's claims.

President Trump's position is that he has a full copyright interest in the foregoing items or, alternatively, has such an interest in his responses in the Interview Sound Recordings, Audiobook and Derivative Works, based upon principles of copyright law. This includes, but is not limited to,  the law laid out in

the compendium of U.S. Copyright Office Practices, which sets forth a clear presumption that "the interviewer and the interviewee own the copyright in their respective questions and responses unless (i) the work is claimed as a joint work; (ii) the applicant provides a transfer statement indicating that the interviewer or the interviewee transferred his or her rights to the copyright claimant, or (iii) the applicant indicates that the interview was created or commissioned as a work made for hire. *See Compendium of U.S. Copyright Office Practices, 3d Ed.* (2021).

Count II of the Complaint seeks an accounting based upon the intentional and continued exploitation of the Interview Sound Recordings, Audiobook and Derivative Works at issue.   Counts III, IV, and V of the Complaint are claims for unjust enrichment against the Defendants for their receipt of the benefits and privilege President Trump has conferred without compensating President Trump in any which for the benefits.

Count VI is a claim for promissory estoppel against Mr. Woodward, and also pled in the alternative to the breach of contract claim set forth in the Complaint, based upon injustice caused to President Trump via his affirmative representations that the Interview Sound Recordings would be utilized for the publication of a single written book, and his procurement of President Trump's consent and reliance based upon those representations, to President's Trump detriment.   President Trump has

4

also asserted claims under the Florida Deceptive and Unfair Trade Practices Act (Count VII).

## *Propriety of Venue*

This Court is the proper venue for resolution of this dispute.

28 U.S.C 1400(a) is the controlling venue here. The statute governs venue for "civil acts, suits, or proceedings arising under any Act of Congress relating to copyrights." Actions falling into these categories "may be instituted in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). This subsection makes no reference to, and is not expressly limited to, proceedings involving infringement; that contrasts with subsection (b), which sets forth the venue for "[a]ny civil action for patent infringement." *See* 28 U.S.C. 1400.    President Trump's position is that the Defendants "may be found" in the Northern District of Florida, which is why, even if President Trump has not also satisfied the principles otherwise applicable under 28 U.S.C. 1391(b), he has nevertheless shown that this Court is a proper venue. *See* Nu Image, Inc. v. Does 1-23,322, 799 F. Supp. 2d 34, 43 (D.D.C. 2011) ("Plaintiff cites no authority to support the proposition that 1391(b), and not 1400(a), is the controlling venue statute in copyright cases.")[1]

---

[1] Defendants contend the opposite is true, *see infra* at Defendants' position, but those authorities predate this recognition by the District Court of Columbia, and they are also hardly binding. *Third Party Verification, Inc. v. Signaturelink, Inc.*, 2006 U.S. Dist. LEXIS 103553, at *4 n.1 (M.D. Fla. June 20, 2006) is a 2006 case in which the Court recognized that "[g]*enerally* § 1400(a) determines venue for civil cases relating to copyrights. However case law in *other circuits* suggests venue for a declaratory judgment involving copyright invalidity is governed by the general venue states, 28

"Generally, courts agree that a suit 'arises under' the Copyright Act if it seeks remedies "expressly granted by the Act, *e.g.*, a suit for infringement or for the statutory royalties for record reproduction," or "asserts a claim requiring construction of the Act." *Jones v. Glad Music Publishing & Recording LP*, 535 F. Supp. 3d 723 (M.D. Tennessee 2021) (citing cases from, *inter alia*, the Second Circuit). "The analysis of whether claims arise under the Copyright Act 'turns on what is alleged on the face of the complaint.'" *Id.* (citation omitted).

> Thus, for example, "if the complaint alleges copyright infringement or seeks an injunction under the Copyright Act, under T.B. Harms the federal court has jurisdiction[.]" Id. Likewise, claims premised upon authorship of a copyrighted work arise under the Act. Severe Records, 658 F.3d at 580, 581 (holding that the court had jurisdiction over an action in which the plaintiffs sought a declaratory judgment to identify the authors of certain sound recordings and the underlying compositions, where the defendants had threatened to sue the plaintiffs for copyright infringement on "numerous occasions"). In addition, ownership claims grounded in disputes about authorship are considered to arise under the Act. See, e.g., Merchant v. Levy, 92 F.3d 51, 55 (2d Cir. 1996) ("Plaintiffs' action seeking to establish their rights to copyright co-ownership because of their status as co-authors of a joint work falls well within these jurisdictional boundaries." (emphasis added))

*Id*. President Trump's claims are premised upon authorship of a copyrighted work, and the Defendants here could have brought a coercive action against him under the

---

U.S.C. 1391." (emphasis added) (citing to 8th Circuit and District of South Dacota cases from 1979 and 1998, respectively.

Copyright Act (and in fact have not only marked physical copies with a copyright symbol but also applied for a copyright with the Copyright Court to confirm Mr. Woodward holds a competing copyright interest. Since this is a case where authorship is at issue, and the opposing party has engaged and continues to engage in a coercive action, the claims here arise under the Copyright Act.

*The Defendants "may be found" in this District*

President Trump's position is that the Defendants "may be found" in the Middle District of Florida. *See* *Nu Image, Inc. v. Does 1-23,322*, 799 F. Supp. 2d 34, 43 (D.D.C. 2011) ("It is well established that § 1400(a)'s "may be found" clause refers to a judicial district in which a defendant is subject to personal jurisdiction.") (citing *Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co., Inc.,* 8 F.3d 441, 445–47 (7th Cir.1993)).  SSI has consented to personal jurisdiction in this State and in this District, as it is a corporation that transacts business within this District through, among other things, its acquisition of content from and provision of publishing services to authors. SSI acquires publishing rights from authors and provide publishing services, including editing, marketing, sales, and distribution of books, throughout the United States. By its own admission, it is a "leading international publisher," a "global leader in publishing," "a major force in today's consumer publishing industry, dedicating to bringing an extensive cross section of first-class information and entertainment in all printed, digital, and audio formats to a

7

worldwide audience of readers."[2] SSI has a pervasive, broad reach, as it has "has approximately 1500 employees and can distribute its titles in physical and digital editions in more than 100 countries and territories around the world." It "proudly brings the works of its authors to readers in more than 200 countries and territories."[3] SSI sells and distributes its publications, including the works at issue in this action, via its employees and agents in Florida and throughout the United States, including this District.  SSI not only operates, conducts, and engages in business in Florida, *see* Fla. Stat. 48.193(1)(a)(1), including this District, but also engages in substantial and not isolated activity with the state of Florida, including this District. SSI's activities in Florida are extensive and pervasive, with significant business operations and revenue derived from established commercial relationships in this state.

Woodward is an investigative journalist, an associate editor of *The Washington Post*, a nationally distributed media platform, where he has worked since 1971. He has authored and co-authored twenty-one (21) books, fifteen (15) of which have been national bestsellers.  Woodward is also credited as the author of the publications underlying this action.  Woodward regularly authors articles and books which SSI, inter alia, frequently publishes on a global scale. To publicize and sell

---

[2] https://about.simonandschuster.biz/corporate-overview/#:~:text=Simon%20%26%20Schuster%20has%20publishing%20and,presence%20in%20every%20major%20market; https://www.simonandschuster.biz/p/social-impact

[3] https://about.simonandschuster.biz/news/sales-for-bob-woodwards-rage/

more copies of such works, Woodward often appears on nationally and internationally televised programs. Woodward has consented to personal jurisdiction in this State and in this District, as he transacts business within the District through his investigative journalism and publication, marketing and sales of literary materials, including the materials that are the subject of this lawsuit. Woodward has gained "international attention," is considered a "legendary" investigative journalist, and markets himself as, *inter alia*, a keynote and fireside chat speaker available *anywhere* domestically in the United States for a fee of $45,000.00 to $55,000.00.[4] (emphasis added). In November 2017, he released a series of video lessons titled *Bob Woodward Teaches Investigative Journalism* for streaming on the MasterClass streaming platform website. The course is available for purchase via the MasterClass website throughout the United States, including the State of Florida and this District.

Woodward not only operates, conducts, and engages in business in Florida, *see* Fla. Stat. § 48.193(1)(a)(1), including this District, but also engages in substantial and not isolated activity with the state of Florida, including this District. Woodward's activities in Florida are extensive and pervasive, with significant business operations and revenue derived from established commercial relationships in this state. Additionally, Woodward has breached a contract in Florida by failing

---

[4] https://gravityspeakers.com/speaker/bob-woodward/

4866-7653-1553v.4 3901014-000707

to perform acts required by the contract to be performed in this state. *See* Fla. Stat. §§ 48.193(1)(a)(7).

Paramount has consented to personal jurisdiction in this District, as it transacts business within the District through its wholly-owned division, SSI. Additionally, Paramount's assets include SSI, and Paramount exerts direct control over the executive leadership of SSI. By SSI's own admission, it "enjoys a close relationship with parent company Paramount."[5] Moreover, during the time period that significant and relevant events occurred, Paramount was actively seeking to sell SSI to Penguin Random House and had heightened oversight of SSI's operations.  Paramount not only operates, conducts, and engages in business in Florida, *see* Fla. Stat. § 48.193(1)(a)(1), including this District, but also engages in substantial and not isolated activity with the state of Florida, including this District. Paramount's activities in Florida are extensive and pervasive, with significant business operations and revenue derived from established commercial relationships in this state.

Each of these Defendants committed tortious acts and omissions in Florida, and their tortious acts and omissions caused injury to President Trump in Florida. *See* Fla. Stat. §§ 48.193(1)(a)(2).

The Defendants have purposefully engaged in the business of publishing,

---

[5] https://about.simonandschuster.biz/corporate-overview/#:~:text=Simon%20%26%20Schuster%20has%20publishing%20and,presence%20in%20 20every%20major%20market.

4866-7653-1553v.4 3901014-000707

distributing, promoting, and selling various sources of literature throughout the United States, including Florida, for which they have each derived significant income. The Defendants reasonably expected that such literature, including the materials that are the subject of this lawsuit, would be sold and distributed in Florida. Each of the Defendants conducted or has conducted significant revenue-producing business, including interstate and intrastate commerce, in Florida. Each can reasonably expect the sale and distribution of said literature to have consequences in Florida. Each of the Defendants have transacted business in Florida and each of the Defendants regularly do or solicit business in Florida and derive substantial revenue from goods used or services rendered in Florida, and reasonably should expect their unlawful conduct to have consequences in Florida.  Based on the foregoing, and notwithstanding the Defendants' reference to the "limited" sales of the Audiobook and Derivative Works, venue is proper in the Northern District.[6]

*This action should not be transferred.*

Defendants bear the burden of proving that transferring this matter to the District of Columbia is appropriate. President Trump disagrees. However, President Trump's understanding is that the Defendants no longer wish to transfer this matter

---

[6] Defendants have advised that sales in the Northern District of Florida are "limited," but Plaintiff has not received any proof thereof, which is why jurisdictional discovery is required here, as set forth below. On a side note, Plaintiff's reliance upon *Nunes v. CNN*, 2023 WL 2468646, at *5 (M.D. Fla. Mar. 1, 2023) is misplaced and incorrect, as the Plaintiff will submit when responding to the Defendants' motions.

to New York.

## B. Defendants' Position

Through this lawsuit, President Trump claims ownership of copyrighted materials that do not belong to him because they were authored by the reporter Bob Woodward.  Between December 2019 and August 2020, Woodward conducted and recorded nineteen (19) interviews of President Trump while he was President (the "Interviews").  After the Interviews were used extensively in his 2020 book *Rage,* Woodward subsequently decided to create an audiobook based on the Interviews so the public could better understand President Trump's thinking on the matters of immense national importance under discussion.  Woodward oversaw the editing of the raw tapes for clarity and also authored copious original content – including an Introduction, Epilogue and 227 commentaries correcting or contextualizing President Trump's statements.  The resulting audiobook was entitled *The Trump Tapes* and it was published on October 22, 2022 by Simon & Schuster.  A companion text edition of *The Trump Tapes:  The Historical Record* was published on or about November 22, 2022 in paper and ebook formats (collectively with the *Trump Tapes* audiobook, the "Work").

President Trump now seeks a declaratory judgment that he is the "sole author and copyright owner" of the entire Work and raw tape recordings.  *See* Dkt. 32, ¶70. In the alternative, President Trump seeks a declaratory judgment that he exclusively

4866-7653-1553.v.4 3901014-000707

"owns the copyright in his responses" to Woodward's questions in the Interviews and Work. *Id*. at ¶71. The Amended Complaint also alleges one related count of "Accounting." *Id*. at ¶¶73-80[7] Finally, the Amended Complaint states seven state-law claims derived from Woodward's alleged breach of an agreement not to use his Interviews for any other purpose than for fact-checking his previous book, *Rage*. *Id*. at ¶¶81-136.

Defendants seek dismissal of the Amended Complaint on two grounds – venue/*forum non conveniens* and failure to state a claim.[8] On venue, the Amended Complaint alleges that the Northern District of Florida is a proper venue "pursuant to 28 U.S.C. §1391(b)(2) because, *inter alia*, a substantial part of the events giving rise to the claim occurred here, and pursuant to 28 U.S.C. §1400(a), as the Defendants may be found in this jurisdiction because they are subject to personal jurisdiction in this district."[9] Dkt. 32, ¶24. As a threshold matter, the special

---

[7] President Trump contends that this is not a copyright infringement action and that he seeks only a declaration that he owns the copyright in Woodward's Interviews and Work. At the same time, however, the Amended Complaint demands damages amounting to, "at minimum, $49,980,000.00." Dkt. 32, ¶72(d).

[8] Defendants' initial motions to dismiss were mooted when President Trump filed his Amended Complaint on April 24, 2023. Defendants intend to file, on or before May 19, 2023, renewed motions to dismiss for (a) failure to state a claim and (b) for improper venue (or, in the alternative, for a transfer to another district).

[9] 28 U.S.C. §1391 is the generally applicable provision that determines whether venue is proper in federal courts and was the sole basis for venue pleaded in President Trump's original complaint. 28 U.S.C. §1400(a), which appears for the

copyright statute 28 U.S.C. §1400(a) is inapplicable here because this is a Declaratory Judgment Act case governed exclusively by the general venue statute 28 U.S.C. §1391(b)(2).  *See, e.g.*, *Third Party Verification, Inc. v. Signaturelink, Inc.*, 2006 U.S. Dist. LEXIS 103553, at *4 n.1 (M.D. Fla. June 20, 2006) (applying §1391(b)(2) to declaratory judgment action seeking to invalidate a copyright); *Database Am., Inc. v. Bellsouth Adver. & Publ'g Corp.*, 825 F. Supp. 1216, 1223 n.13 (D.N.J. 1993) ("Venue in a declaratory judgment action for patent or copyright infringement is governed by the general venue statute at 28 U.S.C. § 1391(b), rather than by the specific venue statute for infringement actions at 28 U.S.C. § 1400…."); *Finch v. Weigh Down Workshop Ministries, Inc.*, WL 1243729, at *2 (E.D. Va. Mar. 18, 2019) ("Venue in copyright cases is usually governed by 28 U.S.C. § 1400. However, because this is a declaratory judgment action, the general venue statute applies.").[10]   28 U.S.C. §1391(b)(2) also exclusively determines whether the Northern District of Florida is a proper venue for President Trump's state law claims.

---

first time in the Amended Complaint, applies specifically to lawsuits "arising under any Act of Congress relating to copyrights…"

[10] President Trump cites two inapposite decisions in support of his argument that § 1400 governs the entire venue analysis here.  *Nu Image, Inc. v. Does 1-23,322*, 799 F. Supp. 2d 34 (D.D.C. 2011) is a copyright infringement case – not a declaratory judgment action – and it therefore says nothing about which venue statute applies to claims seeking a declaratory judgment as to the ownership of copyrights. Similarly, *Jones v. Glad Music Publishing & Recording LP*, 535 F. Supp. 3d 723 (M.D. Tenn. 2021) explicitly "does not reach the question of venue."  *See id*. at 738.

4866-7653-1553v.4 3901014-000707

President Trump cannot shoulder his burden under 28 U.S.C. §1391(b)(2) because *none* of the events giving rise to his claim occurred here (let alone "significant events"). None of the parties reside here, none of the Interviews were conducted while the participants were located in the Northern District of Florida, Woodward authored the Work in Washington D.C. and the alleged "agreement" from which President Trump derives his state law claims (*see, e.g.*, Dkt. 32, ¶125) was made outside this District. Nor, can venue be established on the basis of (limited) sales of the Work in the Northern District of Florida. *See, e.g., Nunes v. CNN*, 2023 WL 2468646, at *5 (M.D. Fla. Mar. 1, 2023).[11] Alternatively, this action should be transferred on *forum non conveniens* grounds. Because the events underling this lawsuit occurred primarily in Washington D.C. and New York, the following key factors support a transfer: the convenience of the witnesses, access to sources of proof, convenience of the parties, the locus of operative facts, the availability of process to compel unwilling witnesses, and trial efficiency. President Trump will suffer no material prejudice from litigating in Washington D.C. or New

---

[11] Even assuming arguendo that book sales and related activities suffice to establish personal jurisdiction over some or all of the Defendants, the applicable standard for establishing venue is *not* coextensive or interchangeable with personal jurisdiction. The appropriateness of venue in the Northern District of Florida depends instead on the narrower question of whether "substantial … events giving rise to the claim occurred in this District" (and they did not).

York since he is involved in active litigation in both Districts and apparently owns residential properties in the vicinity.[12]

As to the merits of the action, the Amended Complaint fails to state a viable cause of action.  The declaratory judgment and accounting claims are barred by his failure to obtain a registration from the Copyright Office prior to filing suit.  Next, President Trump's copyright ownership claim fails because Woodward is the Work's sole author.  Alternatively, President Trump cannot own a copyright interest in any portion of the Work or Interviews because a sitting President's responses to a journalist interviewing them about matters of public policy arising during his administration are quintessential "government works" – reside in the public domain pursuant to. 17 U.S.C. §§101, 105.  Even assuming *arguendo* that President Trump had some copyright interest in the interview tapes, the Work is an obvious fair use. The state law claims are preempted and, even if they were not, President Trump has failed to plausibly plead any of cause of action under state law.  *See, e.g.*, *Golden v. Clear Advantage Mktg.*, 2016 WL 9651215, at *9 (E.D. La. Sept. 30, 2016).

---

[12] Contrary to President Trump's understanding set forth above, Defendants would welcome a transfer of this action to the Southern District of New York in addition to the District of Columbia on the grounds that these are both more convenient venues than the Northern District of Florida.

4866-7653-1553v.4 3901014-000707

### III.   POSSIBILITY OF SETTLEMENT OR RESOLUTION OF THE CASE

The parties discussed the possibility of resolving this dispute by means other than litigation.  President Trump is amenable to mediation or other form of dispute resolution, but Defendants believe such settlement discussions would not be fruitful or likely to lead to a resolution at this juncture.

### IV.   PROPOSED TIMETABLES AND CUTOFF DATES

#### A. Disputed Proposal for Partial Stay of Discovery Pending Resolution of Defendants' Venue Motion to Dismiss

The parties discussed a proposal by Defendants for a partial stay of discovery – which would limit discovery to matters relevant to the issue of venue – pending resolution of Defendants' forthcoming Motion to Dismiss for Improper Venue or, in the Alternative, for a Transfer of this Action to a more appropriate District (the "Venue Motion").  The parties disagree as to whether such a stay should be granted, however, and set forth their respective positions below.  The parties respectfully request a ruling from this Court regarding the proposed stay and, if it pleases the Court, will make themselves available for a hearing on this issue.

#### i.  Defendants' Position

The interests of justice and judicial economy strongly favor a partial stay limiting discovery to matters relevant to venue and *forum non conveniens* during the pendency of the Venue Motion.  Defendants have a strong motion to dismiss for

improper venue or transfer to another district, which can be decided expeditiously following limited discovery.  President Trump's counsel has indicated that he will primarily argue that venue is proper in the Northern District of Florida based on sales of the Work there.  Defendants are willing to promptly produce data sufficient to establish sales within the District (to the extent such data is available) as well as other information relevant to the Venue Motion so that President Trump can incorporate this information into his opposition to Defendants' Venue Motion.

Defendants would be harmed if full discovery proceeds before the proper venue for this action is decided.  Defendants respectfully submit that substantive discovery should be governed by the Court that ultimately decides the merits of this case – likely a Court in another District.  *See, e.g.*, *Hourani v. Mirtchev*, 2011 WL 13247491, at *1 (D.D.C. July 13, 2011) (granting discovery stay where *forum non conveniens* could dispose of case).  Requiring Defendants to expend resources on burdensome discovery, only to start the case again before a different Court applying different rules, would be overly burdensome, wasteful and could potentially lead to inconsistent results in the event of discovery disputes.  Moreover, Defendants will file a substantial motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) – which may be decided by this Court or another – and requiring Defendants to proceed with unbridled discovery would require enormous expenditures of

resources on producing documents that may be of no value to resolving this matter.[13]

This burden is not hypothetical.  On April 11, 2023, President Trump served each

Defendant with requests for production each Request containing approximately one

hundred separate demands for documents across broad range of subjects.  President

Trump has also served dozens of interrogatories.  While Defendants intend to serve

written responses and objections to these initial discovery requests within the time

permitted, it would be unnecessarily burdensome to require Defendants to undertake

the efforts necessary to fulfil all document requests given the pending motions to

dismiss.  *See Hetherington v. Lee*, No. 3:21-CV-671-MCR-EMT, 2021 WL

7084092, at *1 (N.D. Fla. June 24, 2021) (granting stay where defenses likely to be

meritorious).[14]

---

[13] *Chavous v. D.C. Fin. Resp. & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 2 (D.D.C. 2001) ("A stay of discovery pending the determination of a dispositive motion 'is an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources.'") (citing *Coastal States Gas Corp. v. Department of Energy,* 84 F.R.D. 278, 282 (D.Del.1979)); *Dayem on behalf of Dayem v. Chavez*, 2014 WL 12588513, at *1 (S.D. Fla. Mar. 11, 2014) (granting discovery stay).

[14] President Trump also asks this Court to order Defendants to immediately produce copies of Woodward's raw interview tapes.  *See* 21-22 *infra*.  As a threshold matter, these tapes are not relevant to the issue of venue or *forum non conveniens* and should be subject to the partial stay of discovery requested by Defendants.  Moreover, Defendants have legitimate concerns about producing copies of the raw interview tapes that preclude their immediate disclosure. Nevertheless, Defendants have offered (at an appropriate time) to produce a transcript of the raw tapes and to make available for inspection the audio recordings in an agreed-upon location and in form that cannot be copied and further disseminated.  *See* Fed. R. Civ. P. 34.  It would be premature for the Court

19

President Trump would not be harmed by the partial stay requested by Defendants. Defendants anticipate that the venue motion will be fully briefed no later than the end of June 2023 and hope that it will be decided soon thereafter. In the event that Defendants' Venue Motion is denied, the parties can proceed with full discovery before this Court – and Defendants would not oppose a reasonable request to further extend the fact discovery cutoff date, if President Trump deems such an extension necessary. But if the Venue Motion is granted, the partial stay requested by Defendants is the only way to avoid the inevitable complexities and waste that would result from resuming partially completed discovery before a Court that may have significantly different rules with respect to the timing and scope of discovery – including with respect to whether to grant a full stay of discovery pending the disposition of Defendants 12(b)(6) Motion.

For the reasons set forth above, Defendants respectfully request that the Court grant a partial stay of discovery in this action pending the disposition of the Venue Motion, which would permit only limited discovery related to the issue of venue.

## ii. Plaintiff's Position

On March 28, 2023, this Court entered an Initial Scheduling Order stating that the Order is being entered "so that discovery may proceed expeditiously and without

---

to order Defendants to produce these materials, particularly in the absence of a protective order and while Defendants continue to negotiate these issues with President Trump in good faith.

unnecessary delay." See Initial Scheduling Order at p. 2. Plaintiff has interpreted this language of the Court to mean that discovery may be propounded forthwith; with that in mind, discovery requests were propounded to each of the Defendants on April 11, 2023. Based upon the Court's prior order, the time is ripe for discovery—not only jurisdictional but also general.

Regardless of whether this matter is ultimately disposed of in another court, the same issues will be involved: who sold what and when; who said what and when; who owes what to whom; and who did what with the Interview Sound Recordings. Whether this matter is set in the District of Columbia or the Northern District, the same issues will be at stake. Plaintiff's position is that the Defendants are only asking to kick the can down the road. There is no necessity for a stay here, and no need to pause (i) the service of responses to the Plaintiffs' discovery requests and (ii) the production of responsive documentation, both of which the Plaintiff is seeking.

In the event this Court enters a stay despite the foregoing, the Plaintiff requests that this Court require the Defendants to respond to the requests/interrogatories that have already been served to the extent they are jurisdictional, and to permit further discovery, including but not limited to the issuance of additional interrogatories, in order to fully address the Defendants' jurisdiction claims.

Whether or not this Court implements any kind of stay, the Plaintiff asks that the Defendants be required to make available to President Trump the full Interview

Sound Recordings as recorded by Mr. Woodward. Critical to the Defendants' claims is that the recordings underwent editing to transform them, but those claims cannot possibly be evaluated without production of the original recordings—which the Plaintiff does not have. Only access to those original recordings would permit a Court—whether it is the Northern District or any other judicial body—to resolve this matter. For the sake of efficiency and quicker disposition, the Defendants should be required to produce the same forthwith. Thus far, they have offered a written transcript of the recordings, which Plaintiff is not agreeable to as transcription is not the same as audio. Plaintiff understands that this is something that may be addressed by a confidentiality order, but the parties have not yet reached an agreement as to the same, and it remains unclear whether the Defendants will provide only a transcript. For the sake of efficiency, Plaintiff requests that this Court rule upon this issue, and compel the Defendants to provide them to the Plaintiff, as soon as possible.

### B.  Proposed Timetables and Cutoff Dates

Alternatively, the parties respectfully request an extension of the discovery period set forth in Paragraph 1 of the Initial Scheduling Report, which currently requires that "the due date of any discovery requested is not later than September 25, 2023."  The parties agree that additional time is required to complete discovery (assuming that the case is not dismissed or transferred in the interim).  This lawsuit

– which was brought by the former President of the United States who is currently seeking the Republican nomination for Presidency of the United States – raises unusual and unpredictable complications with respect to conducting discovery. For instance, the parties anticipate that substantial quantities of relevant documents relating to President Trump's participation in the interviews with Woodward will be in the exclusive possession of the United States Government – including emails or other communications between the many relevant federal employees and executive branch officials who arranged, participated in or had knowledge concerning the Interviews.  The parties anticipate that obtaining copies of these materials will be complicated by administrative hurdles and probable delays.  In addition, President Trump has unusually limited availability due to his status as a candidate for the presidency and his other legal proceedings, which means that additional time will be required to coordinate document discovery from him.  Therefore, the parties believe that approximately three additional months will be required to complete fact discovery.

For the reasons set forth above, the parties respectfully request that the Initial Scheduling Report be amended and jointly propose to the Court the discovery plan outlined below:

| Deadline to Exchange Initial Disclosures | 30 days from the Court's entry of a final scheduling order |
| --- | --- |

| Deadline to Join Other Parties | 30 days from the Court's entry of a final scheduling order. |
|---|---|
| Deadline to Complete Fact Discovery | January 11, 2024 |
| Deadline to Serve Expert Disclosures | February 1, 2024 |
| Deadline to File Motions for Summary Judgment | February 8, 2024 |
| Deadline to Serve Rebuttal Expert Disclosures | February 22, 2024 |
| Deadline to Complete Expert Discovery | April 26, 2024 |

In addition, the parties agree that President Trump shall make no further amendments to his pleadings without obtaining an order from the Court granting leave to replead.

## V.   THE PARTIES' RESPECTIVE DISCOVERY REQUIREMENTS

### A. Agreement on Discovery Procedures

Except as specifically indicated in this report, the parties will comply with the discovery procedures set forth in the Federal Rules of Civil Procedure and Local Rules of the Northern District of Florida, as supplemented and/or modified by Paragraphs 2-14 of the Initial Scheduling Report.

## VI.   PRODUCTION OF INFORMATION FROM ELECTRONIC OR COMPUTER-BASED MEDIA

The parties agree that they are both likely to request and produce information from electronic or computer-based media.  The parties discussed whether reasonable measures had been taken to preserve potentially discoverable data and further

4866-7653-1553v.4 3901014-000707

resolved to agree upon appropriate procedures for producing such information – including the items listed in Paragraph 2(vi) of the Initial Scheduling Order – in a stipulated protective order and protocol for the production of electronic materials.

## VII.  GOOD FAITH ESTIMATE AS TO WHEN THE PARTIES BELIEVE THE CASE WILL BE READY FOR TRIAL

The parties provisionally estimate that this case will be ready for trial in August, 2024.  A trial date outside the default eight month period from the date of filing of this case is necessary for all the reasons set forth in Section II, *supra* – including anticipated difficulties with obtaining documents from the U.S. Government and working around President Trump's schedule.

## VIII.  MANUAL FOR COMPLEX LITIGATION

The parties agree that this case should not be made subject to the Manual for Complex Litigation.

4866-7653-1553v.4 3901014-000707

Dated: May 10, 2023

**GS2 LAW PLLC**

/s/ Robert Garson
_____

Robert Garson (FBN 1034548)
Yanina Zilberman (FBN 105665)

20803 Biscayne Blvd., #405
Aventura, Florida 33180
Phone: (305) 780-5212
Email: rg@gs2law.com
        yz@gs2law.com

**DAVIS WRIGHT TREMAINE LLP**

/s/ Elizabeth A. McNamara
_____

Elizabeth A. McNamara (NYBN 1930643)
Linda J. Steinman (NYBN 2137305)
John M. Browning (NYBN 5213038)
Leena Charlton (NYBN 5622147)

1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Phone: (212) 489-8230
Email: lizmcnamara@dwt.com
        lindasteinman@dwt.com
        jackbrowning@dwt.com
        leenacharlton@dwt.com

**GUNSTER, YOAKLEY & STEWART, P.A.**

Kenneth B. Bell (FBN 347035)
Lauren V. Purdy (FBN 93943)
Derek K. Mountford (FBN 127172)

One Independent Dr., Suite 2300
Jacksonville, FL 32202
Phone: (904) 354-1980
Email: kbell@gunster.com
        lpurdy@gunster.com
        dmountford@gunster.com

_Attorneys for Robert Woodward,_
_Simon & Schuster, Inc. and_
_Paramount Global_

**WILLIAMS & CONNOLLY***

Kevin T. Bane (DCBN 438394)
Thomas G. Hentoff (DCBN 128600)

4866-7653-1553v.4 3901014-000707

680 Maine Avenue SW
Washington, DC 20024
Phone: (202) 434-5804

Email: kbaine@wc.com
       thentoff@wc.com

*Of counsel to Robert Woodward*

4866-7653-1553v.4 3901014-000707