## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

PRESIDENT DONALD J. TRUMP, 45th President of the United States of America, in his individual capacity,

 Plaintiff,

 v.

SIMON & SCHUSTER, INC., a New York corporation, ROBERT WOODWARD p.k.a. BOB WOODWARD, an individual, and PARAMOUNT GLOBAL, a Delaware corporation, f/k/a Viacom Inc., successor by merger to CBS Corporation, a Pennsylvania corporation f/k/a Westinghouse Electric Corporation,

 Defendants.

3:23-cv-02333-MCR-ZCB

## DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER FOR IMPROPER VENUE AND INCORPORATED MEMORANDUM OF LAW

i

# **TABLE OF CONTENTS**

**Page**

MOTION TO DISMISS OR, IN THE ALTERNATIVE,
TO TRANSFER FOR IMPROPER VENUE ..........................................................1

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS .............................3

FACTS ...................................................................................................................5

    A.    The Parties .................................................................................5

    B.    The Interviews and The Work..................................................6

    C.    The Amended Complaint ..........................................................9

ARGUMENT .......................................................................................................10

I.    THIS ACTION MUST BE DISMISSED BECAUSE VENUE IS
IMPROPER IN THE NORTHERN DISTRICT OF FLORIDA..................10

    A.    28 U.S.C. §1391(b)(2) Governs Venue Here, Not 28 U.S.C. §1400(a)
..............................................................................10

    B.    N.D. Fla. Is Not a Proper Venue Under Section 1391(b)(2)...............14

II.    IN THE ALTERNATIVE, THE COURT SHOULD TRANSFER THE
CASE FOR THE CONVENIENCE OF THE PARTIES UNDER 28 U.S.C.
§1404 .....................................................................................17

CONCLUSION ....................................................................................................19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A1 Procurement v. Thermcor,*
2015 WL 13659312 (S.D. Fla. Jan. 15, 2015)....................................................19

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas,*
571 U.S. 49 (2013)............................................................................................10

*Coltraine v. Lappin,*
885 F. Supp. 2d 228 (D.D.C. 2012)..................................................................14

*Database Am. v. Bellsouth Adver. & Publ'g Corp.,*
825 F. Supp. 1216 (D.N.J. 1993).....................................................................11

*Emerson Elec. Co. v. Black & Decker Mfg. Co.,*
606 F.2d 234 (8th Cir. 1979).............................................................................11

*Finch v. Weigh Down Workshop Ministries,*
2019 WL 1243729 (E.D. Va. Mar. 18, 2019)..............................................11, 16

*Ford v. Brown,*
319 F.3d 1302 (11th Cir. 2003)........................................................................18

*Fox-Rich Textiles, Inc. v. Malden Mills Indus.,*
1989 U.S. Dist. LEXIS 13437 (S.D.N.Y. Nov. 2, 1989)..................................13

*Freeman v. Comerica Bank & Tr., N.A.,*
2013 WL 12253550 (N.D. Fla. July 1, 2013)....................................................19

*Gen. Tire & Rubber Co. v. Watkins,*
326 F.2d 926 (4th Cir. 1964)............................................................................11

*Golden v. Clear Advantage Mktg.,*
2016 WL 9651215 (E.D. La. Sept. 30, 2016)....................................................13

*Hamel-Schwulst v. Negrotto,*
2010 WL 548318 (N.D. Fla. Feb. 11, 2010).....................................................10

*Jenkins Brick Co. v. Bremer,*
321 F.3d 1366 (11th Cir. 2003)...................................................................14, 15

*Jones v. Glad Music Publ'g & Recording*,
   535 F. Supp. 3d 723 (M.D. Tenn. 2021) ........................................................12, 13

*Maki v. Neptune Constr. Grp., Inc.*,
   310 F. Supp. 3d 1371 (M.D. Fla. 2018)............................................................10

*Manuel v. Convergys Corp.*,
   430 F.3d 1132 (11th Cir. 2005) ........................................................................17

*McDowell v. Ham*,
   2011 WL 2560342 (N.D. Fla. May 23, 2011) ..................................................15

*Michel v. NYP Holdings, Inc.*,
   816 F.3d 686 (11th Cir. 2016) ..........................................................................18

*Modern Comput. Corp. v. Ma*,
   862 F. Supp. 938 (E.D.N.Y. 1994) ..................................................................11

*Montgomery v. Risen*,
   2016 WL 4119865 (S.D. Fla. Jan. 26, 2016)....................................................16

*Motorola Mobility, Inc. v. Microsoft Corp.*,
   804 F. Supp. 2d 1271 (S.D. Fla. 2011) ........................................................17, 19

*Mt. Hawley Ins. Co. v. Adams Homes, LLC*,
   2014 WL 12538169 (N.D. Fla. Jan. 10, 2014) ............................................14, 16

*Nu Image, Inc. v. Does 1-23,322*,
   799 F. Supp. 2d 34 (D.D.C. 2011)....................................................................12

*Nunes v. Cable News Network*,
   2023 WL 2468646, at *5 (M.D. Fla. Mar. 1, 2023) .....................................15, 16

*Pferdmenges v. Bindra*,
   2012 WL 12867831 (S.D. Fla. Nov. 20, 2012) ................................................18

*Robey v. JPMorgan Chase Bank*,
   N.A., 343 F. Supp. 3d 1304 (S.D. Fla. 2018) ..............................................14, 16

*Third Party Verification v. Signaturelink*,
   2006 WL 8448725 (M.D. Fla. June 20, 2006) ..................................................11

*United States Aluminum Corp. v. Kawneer Co.*,
   694 F.2d 193 (9th Cir. 1982) ...............................................................................11

*Wai v. Rainbow Holdings*,
   315 F. Supp. 2d 1261 (S.D. Fla. 2004) ...............................................................10

**Statutes**

28 U.S.C.
   § 1391................................................................................................3, 4, 11, 13
   § 1391(b).................................................................................................*passim*
   § 1391(b)(1) ...................................................................................................14
   § 1391(b)(2) .............................................................................................*passim*
   § 1400.........................................................................................................11, 15
   § 1400(a) ..................................................................................................*passim*
   § 1404......................................................................................................4, 17, 18
   § 1404(a) .........................................................................................................17
   § 1406(a) .........................................................................................................10

**Other Authorities**

Fed. R. Civ. P.
   12(b)(3) ...........................................................................................................10
   12(b)(6) ....................................................................................................3, 5, 9

## MOTION TO DISMISS OR, IN THE ALTERNATIVE,
## TO TRANSFER FOR IMPROPER VENUE

Defendants Robert Woodward ("Woodward"), Simon & Schuster, Inc. ("S&S"), and Paramount Global ("Paramount" and, collectively, "Defendants"), by and through undersigned counsel, respectfully move to dismiss President Trump's Amended Complaint and, in support of this motion, state:

1. Plaintiff alleges venue is proper in the Northern District of Florida "pursuant to 28 U.S.C. § 1391(b)(2) because, inter alia, a substantial part of the events giving rise to the claim occurred here, and pursuant to 28 U.S.C. §1400(a), as the Defendants may be found in this jurisdiction because they are subject to personal jurisdiction in this district."

2. 28 U.S.C. §1400(a) is the copyright venue statute, but it is not applicable here because President Trump's Declaratory Judgment Act and state law claims are all exclusively governed by the general venue statute, 28 U.S.C. § 1391(b)(2), which permits venue "in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."

3. Plaintiff has made no allegations of relevant conduct in this District to support it as a proper venue under 28 U.S.C. § 1391(b)(2). Plaintiff alleges that Woodward's book was sold in the state of Florida and that Paramount

1

has a registered agent in Tallahassee, but such conduct is not sufficient because it did not give rise to this action.

4. Indeed, there are no allegations that could support venue in this District. All the substantial events, including creating, drafting, researching, editing, recording, producing and publishing the Work in audio and print format, occurred in Washington, D.C. and New York.

5. Neither can Plaintiff show venue is proper in this District under Section 1391(b)(1) or Section 1391(b)(3).  Section 1391(b)(1) does not apply because Defendants are not all residents of Florida.  Further, Plaintiff cannot rely on Section 1391(b)(3) because there are proper venues under the statute: the District of Columbia and the Southern District of New York.  Therefore, this case must be dismissed under 28 U.S.C. §1406(a).

6. In the alternative, the Court should transfer this action to the District of Columbia or the Southern District of New York under 28 U.S.C. § 1404(a) for the convenience of the parties.

WHEREFORE, Defendants request that the Court enter an Order dismissing this action for improper venue pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a) or, in the alternative, transferring this action pursuant to 28 U.S.C. § 1404(a).

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

This lawsuit should be dismissed or, in the alternative, transferred to the District of Columbia or Southern District of New York because President Trump cannot establish proper venue in the Northern District of Florida under the applicable 28 U.S.C. §1391 standard.  In his Amended Complaint ("Am.Compl."), President Trump demands a declaratory judgment that he owns the copyright in interviews Woodward conducted while he was President—as well as the entire book Woodward authored based on those interviews, which was published in audio and print editions as *The Trump Tapes* (the "Work").  The Amended Complaint also contains seven state-law claims based on the baseless allegation that Woodward agreed to limit his use of interviews with President Trump to writing his previous book, *Rage*.  Leaving aside the substantive defects in these claims, which Defendants address in their Rule 12(b)(6) Motion, it is clear that the required nexus between President Trump's allegations and the Northern District of Florida does not exist.

Venue is not proper under 28 U.S.C. §1391(b)(2)—permitting venue in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred"—because *none* of the events that gave rise to President Trump's claims occurred in this District.  Woodward interviewed President Trump nineteen times while he was President (the "Interviews"), with the vast majority occurring while both parties were in Washington, D.C.  One interview occurred in Florida, but

3

it was conducted at Mar-a-Lago, located in the Southern District of Florida. Any alleged agreement about when Woodward could publish the Interviews was made in Washington, D.C. Moreover, Woodward wrote, edited, and audio-recorded original content for the Work in Washington, D.C., where he resides. Additional work editing, recording, and publicizing the Work was performed in New York, where S&S is based.

President Trump does not challenge the facts establishing that venue is not proper in this District. Instead, he seeks to sidestep those facts by amending his complaint (originally claiming venue solely under 28 U.S.C. §1391(b)(2)) to allege that venue is also proper "pursuant to 28 U.S.C. §1400(a)," Am.Compl. ¶24, which applies to copyright infringement actions and permits venue "in [the] district in which the defendant…may be found." Despite President Trump's efforts to shoehorn his federal declaratory judgment claim into the copyright venue statute, Section 1400 is not applicable here. This is because courts apply the general venue statute—*i.e.*, §1391—to Declaratory Judgment Act cases requiring the adjudication of copyright issues, such as President Trump's instant claim. Furthermore, Section 1391 applies indisputably to President Trump's state law claims.

Even assuming *arguendo* that President Trump could establish venue, this case should still be transferred under 28 U.S.C. §1404. Since virtually all of the relevant events occurred in Washington, D.C. and New York City, multiple factors

4

weigh in favor of transfer, including the convenience of the witnesses, the locations of documents and access to sources of proof, convenience of the parties, the locus of operative facts, the availability of process to compel unwilling witnesses, and trial efficiency.  Nor would President Trump suffer prejudice from a transfer, since he does not reside in this District, owns property in New York City, and is involved in litigation there and in Washington, D.C.

FACTS[1]

### A.    The Parties

Plaintiff Donald Trump was President of the United States from January 2017 to January 2021, and currently resides in Palm Beach County, Florida. Am.Compl. ¶1.

Defendant Bob Woodward is a celebrated investigative journalist residing in Washington, D.C.  Am.Compl. ¶4; Dkt. 17.  Since 1971, he has worked at *The Washington Post* in Washington, D.C., where he conducted his Pulitzer Prize winning reporting on Watergate.  Am.Compl. ¶13; *see also* Declaration of Bob Woodward ("Woodward Decl.") ¶2.  Woodward has written books about every president from President Nixon onwards, including current-President Biden, and

---

[1] Relevant background is further detailed in Defendants' contemporaneously-filed Rule 12(b)(6) Motion to Dismiss ("MTD").

interviewed Presidents Carter, Clinton, George W. Bush, Obama, and Trump in the Oval Office. *See id.*

Defendant S&S is a publishing house incorporated in New York and headquartered in New York City. Am.Compl. ¶¶2, 25; Dkt. 16. S&S has published all of Woodward's books, including those covering the Trump Presidency. *See* Woodward Decl. ¶4. Defendant Paramount is the parent company of S&S and is incorporated in Delaware, headquartered in New York City. *See* Am.Compl. ¶¶2, 17, 25; Dkt. 18.

**B.    The Interviews and The Work**

Between December 5, 2019 and August 14, 2020, Woodward conducted the Interviews with then-President Trump. At the time of all the Interviews, Trump was the President of the United States and resided at the White House. On December 5, 2019, Woodward conducted the first interview in the Oval Office with various government officials in attendance, including Vice President Mike Pence, Senator Lindsey Graham, Senior Political Counselor Kellyanne Conway, Deputy Press Secretary Hogan Gidley, and Chief of Staff Mick Mulvaney. Woodward Decl. ¶8, Appx.A.[2] The next interview occurred in the Oval Office on December 13, 2019,

---

[2] *See* Appendix A ("Appx.A") of Woodward's Declaration for the locations and attendees for each of the Interviews.

and the final in-person interview was at Mar-a-Lago, President Trump's residence located within the Southern District of Florida.  *Id.* ¶¶9-10.

The remaining Interviews occurred via telephone due to the onset of the COVID-19 pandemic.  *Id.* ¶11.  For the telephone Interviews, Woodward generally contacted Trump through his Special Assistant and Oval Office Operations Coordinator, Molly Michaels.  *Id.*  Woodward placed these calls from Washington, D.C.  *Id.*  On a few occasions, President Trump called Woodward at his home in Washington, D.C.  *Id.* ¶12.  Through President Trump's own words and independent reporting, it appears that President Trump was also in Washington, D.C. during these Interviews, except on February 19, 2020 when Woodward reached President Trump aboard Air Force One.  *Id.* ¶13.  Woodward conducted the last interview with Trump on August 14, 2020, and *Rage* was published one month later on September 15, 2020.  Ex. A, 1-2.

Upon reviewing the Interviews in early 2022, Woodward "decided to take the unusual step of releasing these recordings" as an audiobook because he believed that they were important historical artifacts.  Woodward Decl. ¶17; 12(b)(6) Exhibit A, 1.[3]  Woodward proceeded to author a new Work based on his raw interview tapes, working primarily from his home in Washington, D.C. with his collaborator Claire

---

[3] 12(b)(6) Exhibit A ("Ex. A") refers to the Work, incorporated into the Amended Complaint by reference and filed as Exhibit A to Defendants' contemporaneously-filed 12(b)(6) motion.

McMullen, also in D.C.  Woodward wrote an original Introduction and Epilogue for the Work, which put the Interviews and Trump Administration into a broader context.  *Id*. 1-3, 414-19.  The Work also includes "227 new commentaries," authored by Woodward and interspersed throughout the Interviews to "provide essential context or clarification."  *Id*. vii, 2; Woodward Decl. ¶20.

The editing of the Work and the production of the audiobook edition occurred in Washington, D.C. and New York City.  Woodward worked from D.C. with S&S employees located in New York to edit the raw interview recordings for clarity and to remove "excessive repetition, irrelevant material, background noise, unintelligible audio."  Ex. A, vii, 137; Woodward Decl. ¶¶22, 26.  Ex. A, 2; *see* Am.Compl. ¶¶40, 59.  For the audiobook edition, Woodward recorded original material, including the commentaries, Introduction, and Epilogue while in Washington, D.C.; and an audio producer based in New York spliced these original recordings into the Interviews.  Ex. A, vii, 137; Woodward Decl. ¶¶22, 26.  S&S employees, another recording studio, and post-production staff worked on the Work in New York.  *Id.* ¶¶24-26.  The audiobook version of the Work was released in October 2022, with the compact disc set, paperback and e-book versions released in November 2022 and January 2023, respectively.  Am.Compl. ¶¶40, 46.

### C.    The Amended Complaint

President Trump filed his original Complaint on January 30, 2023.  The Complaint contained a single sentence concerning venue, alleging in conclusory fashion that "[v]enue is proper in this jurisdiction pursuant to 28 U.S.C. §1391(b)(2)."  *See* Dkt. 1, ¶18.  On April 4, 2023, Defendants moved to dismiss the Complaint for lack of venue or, in the alternative, to transfer for convenience of the parties.  Dkt 27.[4]  Instead of opposing Defendants' motions to dismiss, President Trump amended his pleadings on April 24, 2023.  The Amended Complaint again devotes a single sentence to venue, which reads: "[v]enue is proper in this jurisdiction pursuant to 28 U.S.C. §1391(b)(2) because, *inter alia*, a substantial part of the events giving rise to the claim occurred here, and pursuant to 28 U.S.C. §1400(a), as the Defendants may be found in this jurisdiction because they are subject to personal jurisdiction in this district."  Am.Compl. ¶24.  President Trump subsequently clarified his position that "28 U.S.C. §1400(a) is the controlling venue [statute] here."  Dkt. 35, 5.

---

[4] On the same date, Defendants also filed a Rule 12(b)(6) Motion to Dismiss the Complaint for failure to state a claim.  Dkt. 28.

## ARGUMENT

## I.   THIS ACTION MUST BE DISMISSED BECAUSE VENUE IS IMPROPER IN THE NORTHERN DISTRICT OF FLORIDA

Courts must dismiss or transfer an action when venue is "wrong" or "improper." 28 U.S.C. §1406(a); F.R.C.P. 12(b)(3). "Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 55 (2013). "[T]he plaintiff has the burden of showing that venue in [his] chosen forum is proper." *Hamel-Schwulst v. Negrotto*, 2010 WL 548318, at *5 (N.D. Fla. Feb. 11, 2010) (citing *Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004)). "The court must accept all allegations of the complaint as true, unless contradicted by the defendants' affidavits, and when an allegation is so challenged the court may examine facts outside of the complaint to determine whether venue is proper." *Wai*, 315 F. Supp. 2d at 1268. "Trial courts generally have broad discretion in evaluating venue arguments and determining whether to transfer or dismiss the case." *Maki v. Neptune Constr. Grp., Inc.*, 310 F. Supp. 3d 1371, 1373 (M.D. Fla. 2018) (citation omitted).

### A.   28 U.S.C. §1391(b)(2) Governs Venue Here, Not 28 U.S.C. §1400(a)

The copyright venue statute, 28 U.S.C. §1400(a), is not applicable because §1391(b), the general venue statute, governs all of President Trump's claims.

Section 1400(a) applies to lawsuits "arising under any Act of Congress relating to copyrights." *Id.* Multiple courts have interpreted this to mean that "[v]enue in a declaratory judgment action for…copyright infringement is governed by the general venue statute at 28 U.S.C. §1391(b), rather than by the specific venue statute for infringement actions at 28 U.S.C. §1400[]." *Database Am. v. Bellsouth Adver. & Publ'g Corp.*, 825 F. Supp. 1216, 1223 n.13 (D.N.J. 1993) (collecting cases). *See also Third Party Verification v. Signaturelink*, 2006 WL 8448725, at *2 n.1 (M.D. Fla. June 20, 2006) (applying Section 1391—not Section 1400—to lawsuit seeking declaratory judgment on copyright claims and observing that "case law in other circuits suggests venue for a declaratory judgment action involving copyright invalidity is governed by the general venue statute"); *Finch v. Weigh Down Workshop Ministries,* 2019 WL 1243729, at *1-2 (E.D. Va. Mar. 18, 2019) (applying Section 1391(b) to "declaratory judgment-copyright case"); *Modern Comput. Corp. v. Ma*, 862 F. Supp. 938, 947 (E.D.N.Y. 1994) (same).[5] In these cases, the plaintiffs sought declarations of non-infringement or copyright invalidity, and the court applied the general venue statute notwithstanding the fact that the dispositive issue in each case turned on analysis of copyright issues.

---

[5] Courts have also applied the general venue statute to cases seeking declaratory judgments of patent claims. *See, e.g.*, *United States Aluminum Corp. v. Kawneer Co.*, 694 F.2d 193, 195 (9th Cir. 1982); *Emerson Elec. Co. v. Black & Decker Mfg. Co.*, 606 F.2d 234, 238 (8th Cir. 1979); *Gen. Tire & Rubber Co. v. Watkins*, 326 F.2d 926, 929 (4th Cir. 1964).

This Court should also apply Section 1391(b) to President Trump's declaratory judgment claim asserting copyright ownership over the Work and the raw interview tapes. President Trump elected to file a claim under the Declaratory Judgment Act instead of an infringement action under the Copyright Act and, having made that decision, he is bound by the general venue statute. He nonetheless argues that Section 1400(a) is the "controlling venue statute in copyright cases," and attempts to sidestep the decisions cited above because they supposedly "predate this recognition by the District of Columbia." Dkt. 35, 5 n.1 (quoting *Nu Image, Inc. v. Does 1-23,322*, 799 F. Supp. 2d 34, 43 (D.D.C. 2011)). But President Trump neglects to mention that *Nu Image* is a copyright infringement case, not a declaratory judgment action, and thus has nothing to say about the venue statute applicable to declaratory judgment claims.

Similarly, President Trump cites *Jones v. Glad Music Publ'g & Recording*, 535 F. Supp. 3d 723, 732 (M.D. Tenn. 2021) (Dkt. 35, 6) to claim that "[t]he analysis of whether claims arise under the Copyright Act turns on what is alleged on the face of the complaint." But this quotation is about subject matter jurisdiction, which is different from venue analysis. This is clear from the *Jones* decision itself, which expressly "does not reach the question of venue." *Id.* at 738 (citation and internal quotation marks omitted). President Trump also cites *Jones* to argue that "claims premised upon authorship of a copyrighted work arise under the Act," *id*. at 732, but

omits the section of the case explaining that "the question of whether the court has jurisdiction over a declaratory judgment action involving a copyright dispute is answered by deciding whether the *defendant* could have filed a lawsuit against the plaintiff that would have been determined to arise under the Copyright Act." *Id.* at 731, 733 (emphasis added).   In other words, jurisdiction turns on whether Defendants could have sued President Trump in a "coercive action" under the Copyright Act; but jurisdiction is lacking here because President Trump never published the Interviews nor committed any other act of infringement for which he could be sued.  *See* Dkt. 35, 6.[6]   Regardless, the weight of authority is clear that venue in this declaratory judgment action is governed by Section 1391.

Even assuming *arguendo* that Section 1400(a) applies to President Trump's declaratory judgment claim, his state law claims are indisputably governed by Section 1391.  *See Fox-Rich Textiles, Inc. v. Malden Mills Indus.*, 1989 U.S. Dist. LEXIS 13437, at *6-7 (S.D.N.Y. Nov. 2, 1989) ("28 U.S.C. §1400(a) governs venue for the copyright claim and 28 U.S.C. §1391(b) determines the propriety of venue on the other claims."); *Golden v. Clear Advantage Mktg.,* 2016 WL 9651215, at *9

---

[6] This highlights a tension—and gamesmanship—in President Trump's Amended Complaint.  He frames his claim as a declaratory judgment claim over ownership (not infringement) presumably in a misguided attempt to sidestep the necessity of registering a copyright.  *See* MTD at 13-14.  At the same time, he seeks "substantial damages" of nearly $50 million based on Defendants' alleged "usurpation" and "exploitation" of the Interviews, which is tantamount to alleging infringement. Am.Compl. Nature of the Action; ¶72(d).

(E.D. La. Sept. 30, 2016) (applying §1400 to copyright claims and §1391 to state law claims). If the Court determines that venue in this District is proper over the declaratory judgment claim but not the other eight causes of action, it would be "inappropriate" to exercise "pendent venue" to keep the case in this District and the entire action should be transferred instead. *Coltraine v. Lappin*, 885 F. Supp. 2d 228, 233-37 (D.D.C. 2012).

### B.   N.D. Fla. Is Not a Proper Venue Under Section 1391(b)(2)

Section 1391(b)(2) requires President Trump to show that a "substantial part of the events" giving rise to his claims occurred in this District. Only the *defendants*' activities "'that directly give rise to a claim are relevant,'" and "of the places where the events have taken place, only those locations hosting a 'substantial part' of the events are to be considered." *Robey v. JPMorgan Chase Bank*, N.A., 343 F. Supp. 3d 1304, 1314 (S.D. Fla. 2018) (citing *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003)). Further, "there must be a substantial connection to the kind of events giving rise to the claim—that is, 'a close nexus to the wrong' alleged—not merely insubstantial 'minimum contacts' with the venue." *Mt. Hawley Ins. Co. v. Adams Homes, LLC*, 2014 WL 12538169, at *2 (N.D. Fla. Jan. 10, 2014) (citing *Jenkins*, 321 F.3d at 1372).[7]

---

[7] The Amended Complaint does not cite the other two permissible grounds for venue under Section 1391(b), but they are not relevant here. Section 1391(b)(1) permits venue if "all defendants are residents of" Florida, but it is undisputed that Woodward

Here, venue is improper in this District because President Trump has failed to allege a single act undertaken by Defendants in this District that has a "close nexus with the cause of action." *Jenkins*, 321 F.3d at 1372–73. Virtually all of the Interviews occurred in Washington, D.C.; Woodward never travelled to this District to create the Work, nor did he knowingly speak with anyone located here; all the writing, editing and production on the audio version of the Work occurred in Washington, D.C. or New York; and the Work was published from S&S's headquarters in New York. Woodward Decl. ¶¶4-6, 11-15, 20-27; *Nunes v. Cable News Network*, 2023 WL 2468646, at *5 (M.D. Fla. Mar. 1, 2023) (allegations that plaintiff was employed in the district insufficient to establish venue); *see also* Appx.A.

The Amended Complaint contains a number of allegations apparently geared towards satisfying Section 1400 (the wrong standard) by demonstrating that there is personal jurisdiction over Defendants because they allegedly performed generic book publishing and marketing activities here. Am.Compl. ¶¶11-18. Even assuming *arguendo* that these allegations are true, they miss the mark under 1391(b)(2)

---

resides in Washington, D.C. *See* Am.Compl. ¶4. Section 1391(b)(3), permitting venue in "any judicial district in which any defendant is subject to the court's personal jurisdiction," is a "fallback" provision only appropriate when there is no proper venue under 1391(b)(1) or (b)(2). Here, venue is proper under these provisions in the District of Columbia and Southern District of New York. *See, e.g*, *McDowell v. Ham*, 2011 WL 2560342, at *1–2 (N.D. Fla. May 23, 2011).

because they are not significant events that have a "close nexus to the wrong alleged." *See, e.g.*, *Mt. Hawley*, 2014 WL 12538169, at *3 (citing *Jenkins*, 321 F.3d at 1372) (finding "connection" to Florida "marginal at best" where insurance policies mailed to District).  Consider, for example, the recent defamation action brought by Devin Nunes against CNN in the Middle District of Florida.  *Nunes*, 2023 WL 2468646, at *5.  The court dismissed the action for improper venue since none of the significant events occurred there, underscoring that it was not relevant that the CNN broadcast at issue was available in "the Middle District of Florida, *in addition to all over the world*."  *Id.* (emphasis in original); *see also Robey,* 343 F. Supp. 3d at 1316 (improper venue where plaintiffs "failed to demonstrate that a 'substantial part' of [defendant's] acts or omissions giving rise to these specific causes of action occurred in this District"); *Montgomery v. Risen,* 2016 WL 4119865, at *2 (S.D. Fla. Jan. 26, 2016) (venue improper where defendant's newsgathering occurred in D.C., not Florida); *Cf. Finch*, 2019 WL 1243729, at *3 (finding proper 1391(b)(2) venue where defendant "researched…synthesized…and drafted her work" within the district).

So too here, the availability of the Work in this District is not a "substantial event" from which President Trump's claims arise, and venue is thus improper.

## II.  IN THE ALTERNATIVE, THE COURT SHOULD TRANSFER THE CASE FOR THE CONVENIENCE OF THE PARTIES UNDER 28 U.S.C. §1404

If the Court finds that the Northern District of Florida is a proper venue, this case should still be transferred "for the convenience of the parties." *See* 28 U.S.C. §1404(a).  When more than one venue is proper, courts "may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." *Id*.  In doing so, courts consider several factors:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).  Here, the majority of factors weigh in favor of transfer.

*First*, at least six factors support transfer because the events that gave rise to this lawsuit occurred in Washington, D.C. or New York City:  the convenience of the witnesses, the locations of relevant documents and access to sources of proof, convenience of the parties, the locus of operative facts, the availability of process to compel unwilling witnesses, and trial efficiency.  *See Motorola Mobility, Inc. v. Microsoft Corp.*, 804 F. Supp. 2d 1271, 1275, 1278 (S.D. Fla. 2011) (transfer was

warranted under §1404 where Motorola "allege[d] venue solely based on Microsoft's products being sold within this District," and "the extent of Microsoft's presence" in Washington State tipped analysis of factors in favor of transfer).

*Second*, transfer is favored because D.C. law applies to the state claims.  There is an "advantage to 'having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflicts of laws, and in law foreign to itself.'" *Pferdmenges v. Bindra*, 2012 WL 12867831, at *5 (S.D. Fla. Nov. 20, 2012) (citing *Ford v. Brown*, 319 F.3d 1302, 1307 (11th Cir. 2003)).  A federal court sitting in diversity applies the conflict-of-law principles of the state in which it sits.  *See, e.g.*, *Michel v. NYP Holdings, Inc.,* 816 F.3d 686, 694 (11th Cir. 2016) (applying New York law when relevant reporting occurred in New York).  Florida courts apply the "most significant relationship" test, which considers "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered."  *Id.* (citations omitted).  Since the District of Columbia has the most significant relationship to this case, its substantive law should apply.

*Third*, neither the relative means of the parties nor Plaintiff's choice of forum weigh against transfer.  President Trump, a non-resident who describes himself as a

billionaire, deliberately sued in a venue with no connection to this case.  *See Motorola*, 804 F. Supp. 2d at 1276 ("[w]here the operative facts…did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration."); *Freeman v. Comerica Bank & Tr., N.A.*, 2013 WL 12253550, at *3 (N.D. Fla. July 1, 2013) (same).  If he is able to litigate his claims here, 600 miles from Mar-a-Lago, he is clearly capable of litigating his claims in the District of Columbia or Southern District of New York.  *See A1 Procurement v. Thermcor*, 2015 WL 13659312, at *5 (S.D. Fla. Jan. 15, 2015) (relative means factor neutral where plaintiff bears cost of travel regardless of forum).  Similarly, Plaintiff is familiar with the District of Columbia and the Southern District of New York, where he is involved in active litigation and owns property.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss the Amended Complaint for improper venue or, in the alternative, transfer to the District of Columbia.

Dated:  May 19, 2023

**DAVIS WRIGHT TREMAINE LLP**

*/s/ Elizabeth A. McNamara*
_____

Elizabeth A. McNamara (NYBN 1930643)
Linda J. Steinman (NYBN 2137305)
John M. Browning (NYBN 5213038)
Leena M. Charlton (NYBN 5622147)
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Phone: (212) 489-8230
Email: lizmcnamara@dwt.com
          lindasteinman@dwt.com
          jackbrowning@dwt.com
          leenacharlton@dwt.com

**GUNSTER, YOAKLEY & STEWART, P.A.**

Kenneth B. Bell (FBN 347035)
Lauren V. Purdy (FBN 93943)
Derek K. Mountford (FBN127172)
One Independent Dr., Suite 2300
Jacksonville, FL 32202
Phone: (904) 354-1980
Email: kbell@gunster.com
          lpurdy@gunster.com

*Attorneys for Robert Woodward,*
*Simon & Schuster, Inc. and*
*Paramount Global*

**WILLIAMS & CONNOLLY***

Kevin T. Bane (DCBN 438394)
Thomas G. Hentoff (DCBN 128600)

680 Maine Avenue SW
Washington, DC 20024
Phone: (202) 434-5804

20

Email: thentoff@wc.com

*Of counsel to Robert Woodward*

## ORAL ARGUMENT REQUESTED

Pursuant to Local Rule 7.1(K), Defendants respectfully request oral argument on this Motion and, together with their accompanying Rule 12(b)(6)Motion to Dismiss the Amended Complaint, Defendants estimate one hour as the required time for the hearing.

## CERTIFICATION OF WORD COUNT

I hereby certify that this Motion to Dismiss or, in the Alternative, to Transfer for Improper Venue complies with Rule 7.1(F) of the Local Rules for the Northern District of Florida and this Court's order granting permission to file an oversized document, not to exceed 4,000 words.  Dkt. 22.

According to the word-processing system used to prepare this Motion to Dismiss or, in the Alternative, to Transfer for Improper Venue, the total word count for all printed text exclusive of the material omitted under Rule 7.1 is 3,982 words.

Dated: May 19, 2023                           */s/ Elizabeth A. McNamara*
     New York, New York                    Elizabeth A. McNamara

**CERTIFICATE OF SERVICE**

I hereby certify that on May 19, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Elizabeth A. McNamara    .*
Attorney