

21st Floor
1251 Avenue of the Americas
New York, NY 10020-1104

**Elizabeth A. McNamara**
212-489-8230 tel
212-489-8340 fax

lizmcnamara@dwt.com

October 28, 2022

**VIA E-MAIL & FEDERAL EXPRESS**

Robert Garson
GS2LAW
20803 Biscayne Blvd., 4th Floor
Aventura, FL 33180
rg@gs2law.com

      Re:    "The Trump Tapes: Bob Woodward's Twenty Interviews with President Donald Trump" by Bob Woodward (the "Audiobook")

Dear Mr. Garson:

      This firm represents Simon & Schuster, Inc. ("Simon & Schuster") and I write in response to your October 24, 2022 letter to Bob Woodward and Simon & Schuster in which your client, former President Donald J. Trump ("Former-President Trump"), claims the Audiobook infringes copyright interests he supposedly holds in Mr. Woodward's recorded interviews. Former President Trump expressly agreed that all Mr. Woodward's interviews were on the record and could be recorded. Put simply, the claims set forth in your letter are meritless as a sitting President of the United States has no copyright interest in a journalist's recorded interviews of him. Consequently, Simon & Schuster and Mr. Woodward will not comply with the Former-President's demand that they account for "100% of gross profits attributable to the Audiobook" (including "disgorgement of any advances" paid to Mr. Woodward) or the Former-President's demand that Mr. Woodward turn over the master recordings of the interviews and all copyrights in the Audiobook.

      The Audiobook consists of 20 on-the-record interviews with Former-President Trump conducted by Mr. Woodward. The interviews delved into a wide range of topics of the utmost public concern including the then-President's handling of the COVID-19 pandemic, diplomacy with North Korea, and his own impeachment, among other topics. The interviews were "comprehensively quoted" in Mr. Woodward's 2020 book *Rage* and approximately thirty minutes of audio from the interview tapes was released in various news stories surrounding the publication of *Rage*.[1] Yet, as he explained in his October 23 *Washington Post* Article, Mr. Woodward decided

---

[1] *See* Bob Woodward, "The Trump Tapes: 20 interviews that show why he is an unparalleled danger" Washington Post (Oct. 23, 2022), https://www.washingtonpost.com/opinions/interactive/2022/trump-tapes-bob-woodward-interviews-audiobook/; (the "October 23 Article"); *see also*, *e.g.*, Robert Costa and Philip Rucker, "Woodward book: Trump says he knew coronavirus was 'deadly' and worse than the flu while intentionally misleading Americans,"

Robert Garson, Esq.
October 28, 2022
Page 2

to release "The Trump Tapes" for the "historical archive" and because they are "central to understanding Trump" as the "interviews offer an unvarnished portrait of Trump. You hear Trump in his own words, in his own voice, during one of the most consequential years in American history." The Audiobook includes significant commentary from Mr. Woodward, offering his reactions, conclusions, and explanations of his method of gathering and confirming information from the then-President.

At no point did Former-President Trump express any concern with Mr. Woodward's extensive use of quotes from his interviews in *Rage* or the publication of significant excerpts from the taped interviews back in 2020. Nor are we aware of Former-President Trump ever expressing a copyright – or any other – interest in the publication of countless audio and video recorded interviews of him by thousands of journalists that have been published in every conceivable medium and format over the years leading up to and during his presidency. The reason is simple: there is no conceivable copyright claim that could arise out of the use of recorded interviews of a President (or candidate for President) in news coverage.

Undeterred by this established history or basic legal principles, your letter claims that Former-President Trump owns a copyright interest in his v*oice* – noting that "[n]ot all voices are made equal" – and the content of Mr. Woodward's interviews. Your position faces insurmountable legal hurdles.

*First,* "[a] voice is not copyrightable." *Azaria v. Bierko*, 2014 WL 12561611, at *5 (C.D. Cal. Feb. 21, 2014). Were it otherwise, any public official, reality television host, or candidate for office could stifle news coverage of their public utterances merely by virtue of claiming a vague copyright interest in their voice. This is not the law.

*Next,* even assuming a voice were copyrightable – it is not – 19 of the 20 interviews that Mr. Woodward conducted with the Former-President and that appear in the Audiobook took place in the fall of 2019 through August 2020 while Former-President Trump was still in office. As your client was serving as President of the United States at the time of these interviews, any of your client's contributions to those interviews constitute "works of the United States Government" not entitled to copyright protection. 17 U.S.C. § 105; *see also* 17 U.S.C. § 101 ("A 'work of the United States Government' is a work prepared by an officer or employee of the United States Government as part of that person's official duties.").

While Former-President Trump may now claim that his interviews with Mr. Woodward were *not* part of his official duties as President of the United States, the law is clear that that is not the case. Indeed, we need go no further than to cite Former-President Trump's own position on the subject: "[n]umerous courts have recognized that elected officials act within the scope of their office or employment when speaking with the press, including with respect to personal matters. ." *Carroll v. Trump*, No. 1:20-cv-7311 (S.D.N.Y. Sept. 8, 2020), Doc. No. 3-1. Former-President Trump strenuously argued this position in support of his quest to have the federal government

---

Washington Post (Sept. 9, 2020), https://www.washingtonpost.com/politics/bob-woodward-rage-book-trump/2020/09/09/0368fe3c-efd2-11ea-b4bc-3a2098fc73d4_story.html (including audio from interviews),

Robert Garson, Esq.
October 28, 2022
Page 3

defend him in the defamation lawsuit E. Jean Carroll brought against him after he denied her allegations of sexual assault in a media interview and he relied on a long list of supporting case law.[2] *See*, *e.g.*, *Does 1-10 v. v. Haaland*, 973 F.3d 591, 600 (6th Cir. 2020) ("unsolicited comments by elected officials on an event of widespread public interest" within scope of duties); *Wuterich v. Murtha*, 562 F.3d 375, 384–85 (D.C. Cir. 2009) (statements made during a series of interviews to the media within scope); *Williams v. United States*, 71 F.3d 502, 507 (5th Cir. 1995) (statements made during press interview within scope).[3]  Here, the Audiobook's coverage of some of the most consequential issues then facing the nation is a far cry from comments made by the Former-President about a decades-old rape allegation.  In short, your client has no legal right to assert a copyright in these interviews because any purported interest is a work of the U.S. Government not subject to copyright protection.

*Finally,* even if Former-President Trump *could* claim some kind of copyright ownership in the tapes – again, he cannot – any claim for copyright infringement would fail on the grounds that my client's use of the tapes in the Audiobook is a clear case of statutorily-protected fair use under the Copyright Act.  17 U.S.C. § 107.  It is telling that your letter cites to an early decision by the district court in *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 808 F. Supp. 2d 634 (S.D.N.Y. 2011), but ignores that the same court ultimately found Bloomberg's use of an entire audio recording of an earnings call to be fair use.  *Swatch v. Bloomberg L.P.,* 861 F. Supp. 2d 336 (S.D.N.Y. 2012).  The Second Circuit soundly affirmed and, in doing so, made clear that Bloomberg's use of the audio was core First Amendment activity that "would be crippled if the news media and similar organizations were limited to sources of information that authorize disclosure."  *Swatch. v. Bloomberg L.P.*, 756 F.3d 73, 85 (2d Cir. 2014).

Indeed, the Second Circuit's *Swatch* decision makes vividly clear why the Audiobook is indisputably protected fair use.  Addressing Bloomberg's use of the full audio tape, the Court underscored that it may be necessary in some instances for "a defendant to faithfully reproduce an original work without alteration" to convey information accurately to the public. *Id.* at 84 ("This latter type of information may be just as valuable . . . as the former, since a speaker's demeanor, tone, and cadence can often elucidate his or her true beliefs far beyond what a stale transcript or

---

[2] In support of his motion, the Former-President also made clear that he was always "on duty," arguing "The President 'must be available, at all times, to lead the Nation' and therefore 'never adjourns.'"  *Carroll v. Trump*, No. 1:20-cv-7311 (S.D.N.Y. Oct. 19, 2020), Doc. No. 2.  *See also*, *e.g.*, Former-President Trump's Top Advisor Peter Navarro observation to NBC's Meet the Press, "you have to understand this is the hardest-working president in history. He works 24/7. He can be in Bedminster, Mar-a-Lago, the Oval Office or anywhere in between."  Philip Bump, "It's possible that Trump actually isn't the hardest-working president in history," The Washington Post (Aug. 10, 2020), https://www.washingtonpost.com/politics/2020/08/10/its-possible-that-trump-actually-isnt-hardest-working-president-history/

[3] While the District Court disagreed with Former-President Trump's argument, even that Court recognized, "[a] comment about government action, public policy, or even an election is categorically different than a comment about an alleged sexual assault that took place roughly twenty years before the president took office."  *Carroll v. Trump*, 498 F. Supp. 422, 453 (S.D.N.Y. 2020).  On appeal, the Second Circuit certified the question of whether Trump was acting within the scope of employment when he commented on rape allegation to the District of Columbia Court of Appeals.  49 F.4th 759, 780-81 (2d Cir. 2022).

Robert Garson, Esq.
October 28, 2022
Page 4

summary can show."). As the *Swatch* court put it – "copying the exact spoken performance of [Former President Trump] was reasonably necessary to convey their full meaning" and "served the interest of accuracy, not piracy." *Id.* at 85. Here, Mr. Woodward explains exactly why – just as in *Swatch* – release of the full audio of the interviews is necessary:

> [A]s I listened to the tapes again, I was stunned by their relevance to understanding Trump. Hearing Trump speak is a completely different experience to reading the transcripts or listening to snatches of interviews on television or the Internet. You will hear Trump as I did—raw, profane, divisive, and deceptive. His language is often retaliatory. He pledges to even the score with his distractors and enemies. He is angry, feels abused, and completely misunderstood. Yet you will also hear him engaging in entertaining, laughing. He is trying to win me over, sell his presidency to me, the full time salesman. . . .

Put simply, it is the very qualities of the recordings that your letter argues entitles the Former-President to a copyright interest, that in fact makes the Audiobook such an obvious fair use. Those qualities, coupled with Mr. Woodward's commentary infused throughout, transforms the publication of the recordings into a clear fair use.

At bottom, there is no basis in fact or law for your client's claims and we are confident that no court would support a finding that the publication of the Audiobook is somehow an opportunity for your client to enrich himself.

This letter is without waiver of any of Simon & Schuster's or Mr. Woodward's rights, remedies, or defenses, all of which are expressly reserved.

Respectfully,

Davis Wright Tremaine LLP

*Elizabeth A. M*

Elizabeth A. McNamara

cc:   Veronica Jordan
      Jeremy Chase